IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

HAROLD S. MARTIN,

      Petitioner,

v.                                Case No. 2:14-cv-16158

DAVID BALLARD, Warden,
Mount Olive Correctional Complex,

      Respondent.

## PROPOSED FINDINGS AND RECOMMENDATION

On May 9, 2014, Harold S. Martin (hereinafter "the petitioner") filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 2). This matter is assigned to the Honorable Joseph R. Goodwin, United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are the respondent's Motion for Summary Judgment (ECF No. 13) and the petitioner's Motion for Partial Summary Judgment (ECF No. 19).

## PROCEDURAL HISTORY OF PETITIONER'S CASE

### *The petitioner's criminal proceedings*

On October 14, 1992, the petitioner was indicted on nineteen counts of sexually-related offenses and one count of battery. *State v. Martin*, No. 92-F-110 (Cir. Ct. Wood Cty, August 20, 1993). (ECF No. 13, Ex. 1). A jury trial occurred in the Circuit Court of Wood County from August 17-20, 1993. (ECF No. 13, Ex. 2). The petitioner was

represented by counsel, James M. Bradley, Jr., who at the time of the petitioner's trial, had been practicing law for more than 20 years.

At the outset of the trial, the State of West Virginia moved to dismiss twelve of the counts in the indictment (Counts Four, Six, Seven, Eight, Ten, Eleven, Twelve, Thirteen, Fourteen, Eighteen, Nineteen and Twenty).  (*Id.* at 61).[1]  The trial judge granted that motion and also denied the defense's motion to sever Counts One, Two and Three.  (*Id.* at 61-62).  Accordingly, the jury ultimately rendered verdicts on eight counts which were re-numbered from those in the indictment.  Specifically, Counts One, Two, Three and Five remained the same; however, in the jury verdict form, Count Fifteen became Count Four, Count Nine became Count Six, Count Seventeen became Count Seven, and Count Sixteen became Count Eight.  (*Id.* at 390-397).

The evidence adduced at trial included the testimony of the two alleged victims. One of the victims was the petitioner's step-daughter, T.M.  She testified that the abuse by the petitioner included forcing her to "kiss" his penis, performing oral sex on her, forcibly rubbing her genitals, kissing her with his tongue in her mouth, having her touch his penis and forcing her into bed naked with him and pressing his bare penis against her buttocks.  (ECF No. 14 at 2).

The other alleged victim was H.B., a friend of the petitioner's 10-year old daughter, who spent the night at the petitioner's home on or about May 29, 1992.  H.B.'s testimony indicated that the petitioner fondled her breasts under her nightgown while she lay on the floor watching television and then, later than night, the petitioner licked her face while he was saying goodnight to her in his daughter's bedroom.  H.B. testified

---

[1] The copy of the trial transcript produced by the respondent does not include all of the page numbers of the transcript in the top right corner.  However, the bottom of each page contains what appears to be the hand-written pagination from the appellate record.  Because it appears to be easier to reference the pages from the appellate record, the undersigned will use those page numbers when citing to the trial transcript.

that, at the time of these incidents, she was in the fourth grade, and was either nine or ten years old.[2]

The petitioner was ultimately convicted on two counts of first degree sexual assault of T.M. (Count Three and re-numbered Count Four), two counts of first degree sexual abuse, once count as to each victim (Count One and re-numbered Count Six), two counts of sexual abuse by a parent, both concerning T.M. (re-numbered Counts Seven and Eight), and one count of battery of H.B. (Count Two).  The petitioner was acquitted of one count of first degree sexual abuse of T.M. (Count Five).  (*Id.*)  He was initially sentenced on October 4, 1993 to confinement in the penitentiary for 15-25 years on each count of first degree sexual assault, 1-5 years on each count of first degree sexual abuse, 5-10 years on each count of sexual abuse by a parent, and one year in the county jail on the count of battery.  (ECF No. 14 at 3).  All sentences were ordered to run consecutively to one another.  (*Id.*)

<u>*The petitioner's direct appeal*</u>

Eight years later, on September 26, 2001, the petitioner, by counsel, filed a Petition for a Writ of Habeas Corpus under the original jurisdiction of the Supreme Court of Appeals of West Virginia (the "SCAWV"), in which he alleged that no direct appeal had been filed on his behalf; thus, he sought to be re-sentenced to allow for a new appeal period.  (ECF No. 13, Ex. 3).  On October 12, 2001, the SCAWV granted the petition, and ordered the Circuit Court of Wood County to re-sentence the petitioner "in

---

[2] According to her testimony, H.B. was born on January 11, 1982.  Thus, on May 29, 1992, H.B. was ten years old.

order to toll his petition for appeal period anew." (ECF No. 13, Ex. 4). The petitioner was thereafter re-sentenced on November 27, 2001. (ECF No. 13, Ex. 5).[3]

On March 28, 2002, the petitioner filed his Petition for Appeal, in which he raised the following assignments of error:

1. Did the Circuit Court err in denying the defendant's motion for severance?

2. Did the Circuit Court err in granting the State's motion to limit defense counsel's cross-examination of the prosecutrix [T.M.] pursuant to the West Virginia Rape Shield Statute?

3. Did the Circuit Court err in failing to hold an in camera hearing regarding the admission of Rule 404(b) (bad acts) evidence?

(ECF No. 13, Ex. 6). On July 2, 2002, the SCAWV refused the petitioner's Petition for Appeal. (ECF No. 13, Ex. 7). The petitioner did not file a Petition for a Writ of Certiorari in the Supreme Court of the United States.

### The petitioner's state habeas corpus proceedings

On October 4, 2002, the petitioner, proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus in the Circuit Court of Wood County.[4] According to the subsequent Petition for Appeal, the initial petition raised the following grounds for relief:

---

[3] The petitioner was convicted prior to the enactment of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), which instituted a one-year statute of limitations for filing petitions under 28 U.S.C. § 2254 in federal court. *See* 28 U.S.C. § 2244(d)(1). The United States Court of Appeals for the Fourth Circuit has held that, "in the case of a habeas challenge to a state conviction that became final prior to the enactment of the AEDPA, a habeas petitioner is entitled to a one-year grace period from the effective date of the Act, April 24, 1996, in which to file a federal habeas petition." *Crawley v. Catoe*, 257 F.3d 395, 398 (4th Cir. 2001) (citing *Brown v. Angelone*, 150 F.3d 370, 375 (4th Cir. 1988)). Thus, the petitioner would have had until April 24, 1997 to file a section 2254 petition, which he did not do. However, in light of the petitioner's re-sentencing on November 27, 2001, the undersigned believes that the one-year statute of limitations runs anew from that date. The respondent does not appear to be challenging the timeliness of the instant petition; nor does the undersigned believe that there is a timeliness issue concerning the claims contained in the petitioner's section 2254 petition.

[4] This date was obtained from the petitioner's Petition for Appeal found in ECF No. 13, Ex. 9 at 3. That date was also confirmed by a review of the docket sheet for Case No. 92-F-110. The Petition for Appeal also indicates that this initial petition was summarily denied by the Circuit Court on October 15, 2002. (*Id.* at 3-4). The initial petition and the order denying the same are not a part of the record before this

A.   Petitioner was denied a fair and impartial jury trial as guaranteed by Article III, § 13, of the Constitution of West Virginia and the Sixth and Fourteenth Amendments to the Constitutional of the U.S.A.

B.   Petitioner was denied his right to the effective assistance of counsel due to the acts of omission and commission of his court-appointed attorney, James M. Bradley, Jr.[5]

C.   Petitioner was denied his right to due process of law when he did not receive the punishment prescribed by statute in force at the time of the commission of the offense.

(ECF No. 13, Ex. 9 at 3).

Following the summary denial of the initial petition on October 15, 2002, the *pro se* petitioner filed a Supplemental Petition on October 17, 2002.   According to the Petition for Appeal, the Supplemental Petition advanced three contentions:

B-2.   Petitioner was denied his right to the effective assistance of counsel when his court appointed attorney, James M. Bradley, Jr., failed to offer a lesser included offense instruction for sexual misconduct under West Virginia Code § 61-8B-9 (1976, c. 43).

B-3   Petitioner was denied his right to the effective assistance of counsel when his court appointed attorney, James M. Bradley, Jr., failed to inform his client that Sexual Misconduct under West Virginia Code § 61-8B-9 (1976, c. 43) is a lesser included offense of First Degree Sexual Assault and afford petitioner an opportunity to decide whether he should submit an instruction on the lesser included offense.

D.   Petitioner was denied his right to a fair and impartial jury trial by the failure of the court to instruct the jury on the lesser included offense of Sexual Misconduct under West Virginia Code § 61-8B-9 (1976, c. 43).

---

court.  According to the Petition for Appeal, however, the Circuit Court's order stated:  "None of the allegations of the petition raise a constitutional issue even though the constitution is cited throughout, and all the errors recited could have been raised on appeal.  Accordingly, the petition is DENIED." *State of West Virginia v. Harold Stephen Martin*, "Order," Case No. 92-F-110 (Cir. Ct. Wood Cty., Oct. 15, 2002). (*Id.*)

[5] Because the initial petition is not a part of the record before this court, the undersigned has been unable to confirm the specific claims of ineffective assistance of counsel that the petitioner attempted to raise therein.

(ECF No. 13, Ex. 9 at 4). On October 18, 2002, the Circuit Court summarily denied the petitioner's Supplemental Petition. (ECF No. 13, Ex. 8).

On November 26, 2002, the petitioner filed a *pro se* Petition for Appeal from the denial of his Circuit Court habeas corpus petitions, which raised the following grounds for relief:

1. Whether the Circuit Court clearly erred when the court dismissed the petitioner's claim that he was denied a fair and impartial jury trial. [This claim involved the trial court's denial of the defense's motion to sever the counts involving the two different victims and further asserted that the indictment was vague and ambiguous, so as to prevent the defendant from being able to prepare an adequate defense.]

2. Whether the Circuit Court clearly erred when the court dismissed the petitioner's claim that he was denied his constitutional right to effective and meaningful assistance of counsel.

    a. Mr. Bradley did not challenge the charges for sexual abuse by a parent, which was not a recognized crime prior to 1988.

    b. Mr. Bradley did not challenge the imposition of a sentence of 15-25 years on the first degree sexual assault counts, which, in 1981, had a penalty of 10-20 years, which constituted an *ex post facto* violation.

    c. Mr. Bradley failed to inform the petitioner that sexual misconduct under W. Va. Code § 61-8B-9 (1976) was a lesser included offense of first degree sexual abuse and Mr. Bradley failed to seek a lesser included offense instruction concerning the same.

3. Whether the Circuit Court clearly erred when the court dismissed the petitioner's claim that he was denied his right to due process of law and his rights under the *ex post facto* clauses of the United States and West Virginia Constitutions when he did not receive the punishment prescribed by the statute in force at the time when the crime was committed.

4. Whether the Circuit Court clearly erred when the court dismissed the petitioner's claim that he was denied his right to a fair and impartial trial by the failure of the court to instruct the jury on the

lesser included offense of sexual misconduct and the trial court's giving of an inaccurate and misleading definition of an element of one of the offenses.

*State ex. rel Martin v. McBride*, No. 31494.  (ECF No. 13, Ex. 9).

On July 24, 2003, the SCAWV granted the petitioner's Petition for Appeal.  (ECF No. 13, Ex. 10).  Thereafter, the petitioner filed an Application for Appointment of Counsel in the Circuit Court of Wood County.  On August 6, 2003, Judge Hill entered an Order indicating that the petitioner had filed the motion in the wrong tribunal, as his appeal was still pending in the SCAWV.  (ECF No. 13, Ex. 11).  On August 12, 2003, the petitioner's Motion for Appointment of Counsel was filed in the SCAWV.  (ECF No. 13, Ex. 12). Then, on August 25, 2003, the petitioner filed a Memorandum in Support of his Petition for Appeal.  (ECF No. 13, Ex. 13).

On September 17, 2003, the SCAWV remanded the matter to the Circuit Court of Wood County for appointment of counsel to file an amended habeas petition, to conduct an omnibus habeas corpus hearing, and to enter a final order on such claims.  (ECF No. 13, Ex. 14).

Almost four years later, on May 16, 2007, the petitioner, by court-appointed counsel, Wells H. Dillon, filed an Amended Petition for Post-Conviction Habeas Corpus and a checklist pursuant to *Losh v. McKenzie*, 277 S.E.2d 606 (W.Va. 1981) (hereinafter "Losh list").  The Amended Petition asserted the following ground for relief:

1.    Defendant's rights to due process of law and a fair trial were violated by the trial court's refusal to order separate trials for the allegations concerning H.B. and the allegations concerning T.M.

2.    Defendant's right to a fair trial was violated because the Petitioner was not present during portions of the proceedings and, in fact, the record reflects that absence.

3.      Defendant's right to a fair trial was violated by the trial court's granting of the State's motion to limit defense counsel's cross-examination of T.M., the alleged victim.

4.      Defendant's right to a fair trial was violated by the trial court's failure to hold an in camera hearing regarding the admission of Rule 404(b) (bad acts) evidence.

5.      Defendant's right to a fair trial was violated by the trial court sustaining the jury's verdict and refusal to grant the defendant's motion for judgment of acquittal at the close of the prosecution's case, as there was insufficient evidence to sustain a conviction.

6.      Defendant's right to a fair trial was violated by the denial of effective assistance of counsel:

    a.      Petitioner's counsel not only allowed, but asked for a preliminary hearing to be held in the case without the presence of the petitioner.

    b.      Petitioner's counsel, despite the fact that he knew the petitioner was in the VA Hospital in Clarksburg for treatment for post-traumatic stress disorder, never had the petitioner evaluated to determine his competency to stand trial or to determine criminal responsibility.

    c.      Petitioner's counsel did not file a motion for a bill of particulars until after the trial of the case had been continued and did not make sufficient effort to obtain copies of all interviews of the alleged victims both by law enforcement and Child Protective Services.

    d.      Petitioner's counsel did not object to the State's motion to continue the trial when the State claims that alleged victim T.M. was unavailable due to a preplanned vacation when the alleged victim was aware of the trial date for a significant period of time in advance and petitioner believed that the reason for the continuance was T.M.'s unwillingness to testify that petitioner committed the alleged offenses.

    e.      Petitioner's counsel was ineffective in his failure to insist on inspecting Western Guidance Center Records to determine whether there was information contained in records to impeach the testimony of T.M.

f.      Petitioner's counsel was ineffective in his failure to ask for a limiting instruction when T.D. [the petitioner's biological daughter and the step-sister of T.M.] testified concerning the Petitioner "French kissing" her, which was not charged in the indictment, but her testimony was permitted by the court as 404(b) evidence.

g.      Petitioner's counsel failed to move for a mistrial when Camille Waldren [the investigating detective] testified that defendant exercised his right to remain silent when she tried to question him.

h.      Petitioner's counsel insisted that petitioner testify when he knew that petitioner would admit to giving H.B. a back rub and that he had been in bed with T.M., his stepdaughter.  Although the petitioner had what was believed to be innocent explanations for these incidents, these admissions were damaging and could have been avoided by defendant not testifying.

i.      Petitioner's counsel was ineffective in that he failed to subpoena witnesses that were familiar with a skin rash that the petitioner suffered from and failed to cross-examine the alleged victims concerning any distinguishing physical characteristics that they observed.  Further, petitioner's counsel did not obtain the services of an expert witness, such as Dr. Jolie Brams, who was familiar with suggestiveness of child interviews concerning sexual abuse and whether their descriptions of such abuse are inconsistent with actually being abused.  Finally, counsel refused to present character witnesses, such as former Marietta Mayor Joe Mathews, who were familiar with the defendant and the defendant's family.

j.      Petitioner's counsel was ineffective in that he failed to have the petitioner undergo a sex offender evaluation and propose a treatment program which are necessary for consideration for probation.  In addition, counsel did not help the petitioner prepare to allocute or allow him to allocute during sentencing.

k.      Petitioner's counsel did not ask for an instruction for the lesser included offense of First Degree Sexual Abuse as it relates to the counts in the indictment concerning first degree sexual assault.

l.     Petitioner's counsel failed to challenge the imposition
       of a sentence of 15 to 25 years imprisonment for first
       degree sexual assault when the offenses were held to
       have been committed prior to the 1984 changes in the
       law that increased the penalty from 10 to 20 years for
       first degree sexual assault to 15 to 25 years
       imprisonment.

m.     Petitioner's counsel was ineffective as shown by his
       failure to designate the entire record for an appellate
       review and the length of time that counsel took to file
       said appeal, which was approximately 8 years.

7.     Defendant's right to a fair trial was violated by Judge Hill's
       handling of jury instructions.

8.     Defendant's right to a fair trial was violated by the knowing and
       intentional use of perjured testimony and failure to disclose
       exculpatory evidence.

9.     Defendant's right to a fair trial was violated by the prosecution's use
       of informers to convict.

10.    Defendant's right to a fair trial was violated by the failure of his trial
       counsel to file a motion for a mental status examination pursuant to
       West Virginia Code § 27-6A-1(a) to determine his mental
       competency to stand trial and potential criminal responsibility.

11.    Defendant's right to a fair trial was violated by the petitioner not
       receiving his own copy of the indictment.

12.    Defendant's right to a fair trial was violated by the pre-indictment
       delay in his case.

13.    Defendant's right to a fair trial was violated by the denial of his
       right to a speedy trial.

14.    Defendant's right to a fair trial was violated by Judge Hill's
       evidentiary rulings.

15.    Defendant's right to a fair trial was violated by the errors contained
       in the pre-sentence report and Judge Hill's practices concerning
       sentencing.

16.    Defendant's right to a fair trial was violated by the way that the
       defendant was sentenced by Judge Hill.

17.   Defendant's right to a fair trial was violated by his counsel's mistaken belief as to parole or probation eligibility.

18.   Defendant's right to a fair trial was violated by the prosecutor's refusal to turn over witness notes after the witness had testified and the non-disclosure of grand jury minutes.

19.   Defendant's right to a fair trial was violated by the prejudicial statements made by trial jurors and by prosecutors.

20.   Defendant's right to a fair trial was violated by excessive pretrial publicity.

(ECF No. 13, Ex. 15).

Two omnibus evidentiary hearings were held on the petitioner's claims on January 23, 2008 and February 4, 2009. (ECF No. 13, Ex. 16). During the hearings, testimony was received from Camille Waldron (the investigating detective), James M. Bradley, Jr. (the petitioner's trial and appellate counsel), Michelle Rusen (the prosecuting attorney who tried the petitioner's case), and the petitioner. (*Id.*)

On July 18, 2012, the Circuit Court entered an Opinion Order denying all of the petitioner's claims for habeas corpus relief, except for Ground Sixteen concerning the sentences he received on the first degree sexual assault counts. With regard to that claim, the Circuit Court ordered that the petitioner be re-sentenced. (ECF No. 13, Ex. 17). On April 23, 2013, the petitioner was re-sentenced on those counts to 10-2o years on each count. The court re-imposed the other prior sentences. (ECF No. 13, Ex. 19).

On September 28, 2012, the petitioner filed a Notice of Appeal from the denial of his Amended Habeas Corpus Petition by the Circuit Court (Case No. 12-1034). (ECF No. 13, Ex. 18). On May 23, 2013, the petitioner filed an additional Notice of Appeal from his re-sentencing order. (Case No. 13-0538) (ECF No. 13, Ex. 23). Ultimately, the

petitioner, who was still represented by Wells H. Dillon, reduced his claims for relief on appeal to the following:

1.   The Circuit Court erred in not granting the petitioner's request for the court to dismiss the indictment filed against him or grant him a new trial due to the many instances of the ineffective assistance of his trial counsel James Bradley Jr. that are clear from a review of the record made at trial and during the evidentiary hearings conducted on the petitioner's Petition for Habeas Corpus Relief. [In the body of his brief, the petitioner repeated the 13 claims of ineffective assistance of counsel raised in his Amended Habeas Corpus Petition filed in the Circuit Court, as discussed *supra*,]

2.   The Circuit Court erred in not finding that the petitioner's constitutional rights to a fair trial were violated by the trial Judge Hill's failure to conduct a proper 404(b) evidence in camera hearing. [This claim concerned the admission of evidence of the petitioner "French kissing" his daughter, T.D.]

3.   The Circuit Court abused its discretion in sentencing the petitioner to consecutive sentences and denying alternative sentencing and imposing a sentence that the petitioner believes to be cruel and unusual in the circumstances of this case. The imposition of thirty-two (32) to seventy (70) years in prison given the offense and the petitioner's advanced age and failing health was tantamount to a life sentence and excessive. Home incarceration would have been far more appropriate under the circumstances.

(ECF No. 13, Ex. 24).

On September 24, 2013, the respondent filed a Summary Response to the petitioner's appellate brief. (ECF No. 13, Ex. 21). The Summary Response asserted that, under the standard set forth in *Strickland v. Washington*, 466 U.S. 667 (1984), the performance of the petitioner's trial counsel was not deficient and did not prejudice the petitioner's defense. (*Id.* at 3-6). The Summary Response further asserted that the petitioner's claim concerning the admission of the evidence concerning his alleged "French kissing" of his daughter was either waived because the petitioner had not offered sufficient argument concerning the same in his appellate brief, or lacked merit

because such evidence was properly admitted under state evidentiary rules concerning evidence of a lustful disposition towards children.  (*Id.* at 6-7).

On January 15, 2014, the SCAWV issued a Memorandum Decision affirming the rulings of the Circuit Court denying the petitioner habeas corpus relief.  *Harold Stephen M. v. Ballard*, No. 12-1034, 2014 WL 184442 (W. Va. Jan. 15, 2014) (ECF No. 13, Ex. 22).   That Memorandum Decision addressed only the two claims raised in the petitioner's first Notice of Appeal and appellate brief.  On that same date, the SCAWV also issued a second Memorandum Decision and Order, *State v. Harold Stephen M.*, No. 13-0538, 2014 WL 184435 (W. Va. Jan. 15, 2014) (ECF No. 13, Ex. 26).  The second Memorandum Decision affirmed the Circuit Court's rulings concerning all three of the claims for relief raised in the petitioner's second Notice of Appeal and appellate brief. (*Id.*)

<u>*The petitioner's section 2254 petition*</u>

On May 9, 2014, the petitioner filed the instant section 2254 petition, which contains three overarching grounds for relief:

1.   There was insufficient evidence to enable the trial jury to find all elements of first degree sexual abuse on May 29, 1992, and therefore, petitioner's conviction and consecutive sentence for sexually abusing H.B. violates multiple provisions of the United States Constitution.

2.   Petitioner was denied meaningful and effective assistance of counsel as secured by the United States Constitution by the acts of commission and the acts of omission of James Bradley, Defense Counsel.

    a.   Petitioner's counsel not only allowed, but asked for a preliminary hearing to be held in the case without the presence of the petitioner.

    b.   Petitioner's counsel despite the fact that he knew the petitioner was in the VA Hospital in Clarksburg for

treatment for post-traumatic stress disorder never had the petitioner evaluated to determine his competency to stand trial or to determine criminal responsibility.

c.      Petitioner's counsel did not file a motion for a bill of particulars until after the trial of the case had been continued and did not make sufficient effort to obtain copies of all interviews of the alleged victims both by law enforcement and Child Protective Services.

d.      Petitioner's counsel did not object to the State's motion to continue the trial when the State claims that the alleged victim T.M. was unavailable due to a preplanned vacation when the alleged victim was aware of the trial date for a significant period of time in advance and petitioner believed that the reason for the continuance was T.M.'s unwillingness to testify that petitioner committed alleged offenses.

e.      Petitioner's counsel was ineffective in his failure to insist on inspecting Western Guidance Center Records to determine whether there was information contained in those records to impeach testimony of T.M..

f.      Petitioner's counsel was ineffective in his failure to ask for limiting instruction when T.D. [the petitioner's daughter] testified concerning the Petitioner "French kissing" her, which was not charged in the indictment, but which testimony was permitted by the court as 404(b) evidence.

g.      Petitioner's counsel failed to move for a mistrial when Camille Waldren testified that defendant exercised his right to remain silent when she tried to question him.

h.      Petitioner's counsel insisted that petitioner testify when he knew that the petitioner would admit during testimony to giving H.B. a back rub and that he had been in bed with T.M., his stepdaughter.  Although the petitioner had what was believed to be an innocent explanation for these incidents, these admissions were damaging and could have been avoided by defendant not testifying.

      i.    Petitioner's counsel was ineffective in that he failed to subpoena witnesses that were familiar with the petitioner's skin rash that he suffered from and failed to cross-examine the alleged victims concerning any distinguishing physical characteristics that they observed. Further, petitioner's counsel did not obtain the services of an expert witness, such as Dr. Jolie Brams, who was familiar with suggestiveness of child interviews concerning sexual abuse and whether their descriptions of such abuse in consistent with actually being abused. Finally, counsel refused to present character witnesses such as former Marietta Mayor Joe Mathews familiar with the defendant and the defendant's family.

      j.    Petitioner's counsel was ineffective in that he failed to have the petitioner undergo a sex offender evaluation and propose a treatment program, which are necessary for consideration for probation. In addition, counsel did not help the petitioner prepare to allocute or allow him to allocute during sentencing.

      k.    Petitioner's counsel did not ask for an instruction for the lesser included offense of first degree sexual abuse as it relates to the counts in the indictment concerning first degree sexual assault.

      l.    Petitioner's counsel failed to challenge the imposition of a sentence of 15 to 25 years imprisonment for first degree sexual assault when the offenses were held to have been committed prior to the 1984 changes in the law that increased the penalty from 10 to 20 years for first degree sexual assault to 15 to 25 years imprisonment.

      m.    Petitioner's counsel was ineffective as shown by his failure to designate the entire record for an appellate review and the length of time that counsel took to file said appeal, which was approximately 8 years.

   3.    Petitioner was denied a fair and impartial trial when the trial judge gave the petit jury an inaccurate definition of "sexual contact," an essential element of the crimes described in the indictment returned by the Grand Jury of Wood County.

(ECF No. 2).

On October 30, 2014, the undersigned ordered the respondent to file a response to the section 2254 petition.  (ECF No. 7).  On December 30, 2014, the respondent filed a Response to the Petition (ECF No. 11), a Motion for Summary Judgment (ECF No. 13), with exhibits which were filed with remote access restricted to case participants and the public terminal (ECF Nos. 13 and 18), and a Memorandum of Law in support thereof (ECF No. 14).

On January 15, 2015, the petitioner filed a Preliminary Response to the respondent's Motion for Summary Judgment (ECF No. 15), in which he also requested additional time to file another response.  On January 21, 2015, the undersigned entered an Order and Notice in which the petitioner was notified, pursuant to the holding of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), of his right and obligation to file a response to the Motion for Summary Judgment, and granted the petitioner additional time to file a comprehensive response to the respondent's motion.  (ECF No. 17).

On January 23, 2015, prior to filing his comprehensive response, the petitioner filed a Motion for Partial Summary Judgment (ECF No. 19), which addresses claims that were not raised in his section 224 petition.  On February 18, 2015, the petitioner filed his Response in Opposition to the respondent's Motion for Summary Judgment.  (ECF No. 22).[6]  On April 2, 2015, the respondent filed a Reply, which also asserted that the Petitioner's Motion for Partial Summary Judgment contains new claims not found in the petitioner's section 2254 petition that are not appropriate for summary judgment.  (ECF No. 24).  The parties' briefs will be addressed in greater detail *infra*.  This matter is ripe for adjudication.

---

[6] This second Response appears to repeat the arguments previously made in the petitioner's Preliminary Response (ECF No. 15).  Accordingly, the undersigned will address only the arguments made in the comprehensive second Response document.  (ECF No. 22).

## STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d), which was adopted as part of the Anti-terrorism and

Effective Death Penalty Act of 1996 (the "AEDPA") provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal Law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> court proceeding.

28 U.S.C. § 2254(d).

In *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000), the Supreme Court held that

under the "contrary to" clause, a federal court may grant a writ of habeas corpus with

respect to claims adjudicated on the merits in state court only if (1) the state court

arrives at a conclusion opposite to that reached by the Supreme Court on a question of

law, or (2) if the state court decides a case differently from the Supreme Court on a set of

materially indistinguishable facts.  The Court further held that under the "unreasonable

application" test, a federal court may grant a writ of habeas corpus with respect to a

claim adjudicated on the merits in state court only if the state court identifies the correct

governing principle from the Supreme Court's decision, but unreasonably applies that

principle to the facts of the prisoner's case.  *Id.* at 413.

Moreover, the AEDPA contains a presumption that a state court's factual findings

are correct:

> In a proceeding instituted by an application for a writ of habeas corpus by
> a person in custody pursuant to the judgment of a State court, a

17

> determination of a factual issue made by a State court shall be presumed
> to be correct.   The applicant shall have the burden of rebutting the
> presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Where a claim has been summarily refused, the undersigned must simply determine whether that decision was legally and factually reasonable under clearly-established federal law.  *See Bell v. Jarvis*, 236 F.3d 149, 158 (4th Cir. 2000) (When a state court summarily rejects a claim without setting forth its reasoning, the federal court reviews the record and the clearly-established Supreme Court law, but still "confine[s] [its] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States.'").

The undersigned has been unable to locate any authority in which either the Supreme Court or the United States Court of Appeals for the Fourth Circuit has specifically expressed an opinion on the appropriate standard of review for claims upon which a federal court exercises its discretion under 28 U.S.C. § 2244(b)(2) to review and deny a claim that was not exhausted in the state courts.  However, it stands to reason that where a claim was not addressed at all in the state courts, a *de novo* review would be appropriate.  *See Weeks v. Angelone*, 176 F.3d 249, 263 (4th Cir. 1999).

Rule 56 of the Federal Rules of Civil Procedure applies to habeas corpus proceedings.  *See*, *e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 81 (1977); *Maynard v. Dixon*, 943 F.2d 407, 412 (4th Cir. 1991).  Entry of summary judgment is appropriate when there is "'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Rule 56(c), Fed. R. Civ. P.).

## ANALYSIS

The respondent's Memorandum of Law in support of his Motion for Summary Judgment first contends that Grounds One and Three of the petitioner's section 2254 petition are unexhausted because they were never presented to the SCAWV in a petition upon which the court rendered a ruling on the merits.   (ECF No. 14 at 8-10).   The respondent further asserts that, notwithstanding the petitioner's failure to exhaust Grounds One and Three, the petitioner is not entitled to habeas corpus relief on the merits of any of the claims in his section 2254 petition, and therefore, the respondent is entitled to judgment as a matter of law on all of those claims.  (*Id.* at 10-16).

### A.    Exhaustion of State Court Remedies

Section 2254(b)(1)(A) of Title 28 of the United States Code, states that a petition for a writ of habeas corpus filed in a federal district court by a prisoner in state custody shall not be granted, unless it appears that the applicant has exhausted the remedies available in the state courts, or if the state has waived the exhaustion requirement.  28 U.S.C. §§ 2254(b)(1)(A), (b)(3).   In West Virginia, prisoners may exhaust their available state court remedies either by stating cognizable federal constitutional claims in a direct appeal, or by stating such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling to the SCAWV.  *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D.W. Va. 1995); *McDaniel v. Holland*, 631 F. Supp. 1544, 1545 (S.D.W. Va. 1986).  A petition for a writ of habeas corpus filed under the original jurisdiction of the SCAWV that is denied with prejudice following a determination on the merits will also exhaust the prisoner's state court remedies.  *See Moore*, 879 F. Supp. at 593; *McDaniel*, 631 F.

Supp. at 1546; *see also, Meadows v. Legursky*, 904 F.2d 903, 908-909 (4th Cir. 1990) (*abrogated on other grounds, Trest v. Cain*, 522 U.S. 87 (1997)).

Additionally, the petitioner must show that the claims he raised in state proceedings are the same as the claims he now seeks to raise in his federal habeas proceeding. *See Pitchess v. Davis*, 421 U.S. 482, 487 (1975); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). The claims in both courts must "fairly present" the "substance" of the claim, based upon the same factual grounds, and must allege that the same federal constitutional right was violated. *Anderson v. Harless*, 459 U.S. 4, 6 (1982).

Based upon the undersigned's review of the evidence of record, it does not appear that the petitioner properly exhausted any of the issues raised in Grounds One and Three of his section 2254 petition through his direct appeal or his state habeas appeal. The petitioner asserts that his claim raised in Ground Three was raised in his *pro se* Petition for Appeal concerning the denial of his initial Circuit Court habeas petition (*State ex rel. Martin v. McBride*, No. 31494, ECF No. 13, Ex. 9) and, thus, he contends that the "state courts have had the first opportunity to hear the claim sought to be vindicated." (ECF No. 22 at 31) (quoting *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). However, the petitioner overlooks the fact that his *pro se* Petition for Appeal was not adjudicated on the merits. Rather, the SCAWV remanded the matter to the Circuit Court for additional proceedings. The subsequent Amended Petition filed in the Circuit Court of Wood County by Mr. Dillon, did not assert any of the claims now raised in Grounds One and Three of his section 2254 petition. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that such claims are unexhausted.[7]

---

[7] The respondent's Motion and Memorandum of Law do not specifically address the exhaustion of Ground Two which contains a litany of ineffective assistance of counsel claims. However, it appears that

A petitioner who seeks habeas corpus relief on an issue after he has failed to appropriately raise that issue in the state courts generally has no further means of addressing such claims in the state tribunals, and such claims may be foreclosed from pursuing relief in the federal courts.  This concept is also known as "procedural default." *See Smith v. Murray*, 477 U.S. 527 (1986); *see also Fisher v. Angelone*, 163 F.3d 835, 844 (4th Cir. 1998).  However, a petitioner may be able to obtain review of a defaulted claim by establishing cause for the default and prejudice from the failure to review the claim.  *See Gray v. Netherland*, 518 U.S. 152, 162 (1996).  In general, "cause" refers to "some objective factor external to the defense that impeded counsel's efforts" to comply with the State's procedures.  *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1999).  "Prejudice" means that the alleged error worked to the petitioner's "actual substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  *McCarver v. Lee*, 221 F.3d 583, 592 (4th Cir. 2000) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  An absence of reasonable diligence will defeat an assertion of "cause" and "prejudice."

The respondent has not specifically asserted that the petitioner's unexhausted claims are procedurally defaulted.  Nevertheless, the petitioner's Response to the respondent's Motion for Summary Judgment asserts that he should be permitted to pursue relief in this court on the unexhausted/defaulted claims in his section 2254 petition (as well as additional unexhausted claims of ineffective assistance of counsel raised for the first time in his Response) based upon the United States Supreme Court's recent decision in *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

---

all thirteen of the claims raised in Ground Two were colorably exhausted via the petitioner's state habeas proceedings and are ripe for adjudication by this court.

In *Martinez*, the Supreme Court held that, although ineffective assistance of habeas counsel, in and of itself, is not a cognizable claim in federal habeas corpus, inadequate assistance of counsel at initial collateral review (habeas) proceedings <u>may</u> establish "cause" and "prejudice" to overcome a prisoner's procedural default of a claim of ineffective assistance of <u>trial</u> counsel, where ineffective assistance of counsel claims are addressed, by law or by practice, for the first time, on collateral review, rather than direct appeal.  The petitioner contends that the failure of Mr. Bradley to raise certain claims in his direct appeal, and Mr. Dillon's failure to pursue all of the claims of ineffective assistance of trial counsel that the petitioner now seeks to raise during the petitioner's Circuit Court habeas proceedings (Case No. 07-P-141), should serve as "cause" and "prejudice" to excuse any procedural default of these claims.  (ECF No. 22 at 11, 33).

However, the Supreme Court's decision in *Martinez* does not automatically render such claims reviewable in federal court.  Rather, the petitioner must establish that his state habeas counsel was, indeed, ineffective in failing to raise such claims.  The petitioner must demonstrate that the underlying claims of ineffective assistance of trial counsel were <u>substantial</u> (that is, that they have "some merit"), and that the petitioner was prejudiced by the failure to have the claims addressed in the state courts.

The respondent's Reply brief contends that "Procedural Default and Exhaustion are analytically distinct categories, and accordingly, cause to excuse procedural default does not alleviate Petitioner's burden to exhaust his state court remedies."  *See Coleman v. Thompson*, 501 U.S. 722, 739 (1991) ("The [procedural default] doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet state procedural requirement.")  (ECF No. 24 at 2-3).

The respondent emphasizes that he has not asserted that the claims contained in Grounds One or Three failed to meet a state procedural requirement, but rather that the petitioner simply did not exhaust those claims by presenting them in the same form to the SCAWV.  (*Id.* at 3).  The Reply goes on to speculate how the petitioner may be trying to demonstrate that the unexhausted claims could now be procedurally defaulted, but asserts that the petitioner's claims of ineffective assistance of counsel for failing to raise these issues in his direct appeal or habeas proceedings leaves a reasonable probability that the SCAWV could allow the petitioner another bite at the appeal for review of those claims.  (*Id.* at 3-4).

Notwithstanding the petitioner's assertions concerning cause and prejudice, the undersigned proposes that the presiding District Judge **FIND** that the petitioner cannot establish that he is entitled to any relief on the merits of his unexhausted claims. Pursuant to 28 U.S.C. § 2254(b)(2), a claim for habeas corpus relief may be denied on the merits, despite the failure to exhaust state court remedies.  Therefore, further analysis of the procedural default of the unexhausted claims and the cause and prejudice arguments made by the parties is unnecessary.  The undersigned will now turn to an analysis of the merits of each of the grounds contained in the petitioner's section 2254 petition.

### B.    Ground One – Sufficiency of evidence and other related claims

The heading of Ground One of the petitioner's section 2254 petition asserts that there was insufficient evidence to enable the jury to find all of the elements of first degree sexual abuse on May 29, 1992 in order to support the petitioner's conviction on Count One of the indictment.  However, Ground One of the section 2254 petition is

convoluted and also appears to assert several other issues therein.  The undersigned will attempt to address each issue.

Concerning sufficiency of the evidence claims, the relevant question that this court must answer is whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  This standard, which is also discussed in the respondent's Memorandum of Law in support of his Motion for Summary Judgment (ECF No. 14 at 11), is the clearly-established federal precedent that must be applied in determining whether the petitioner is entitled to habeas relief on his sufficiency of evidence claims.

*First Degree Sexual Abuse Conviction and the Sexual Contact Element (Count One)*

In order to convict the petitioner of first degree sexual abuse with regard to the victim, H.B., as set forth in Count One of the indictment, the jury had to find as follows:

1.      The defendant, Harold Stephen Martin,
2.      On or about the 29th day of May, 1992
3.      Did engage in sexual contact with H.B.
4.      By intentionally touching the breasts of said H.B.
5.      And that at the time Harold Stephen Martin engaged in such act, he was fourteen years old or more and H.B. was eleven years old or less.

In Ground One of his section 2254 petition, the petitioner first appears to assert that the evidence presented at trial concerning the alleged sexual abuse of H.B. did not meet the statutory definition of "sexual contact."  (ECF No. 2 at 6).  His petition states:

Given [H.B.] was ten years old in 1992, the prosecution could not prove an essential element of the statutory offense, i.e., sexual contact.  A reasonable juror could not find all elements of the offense and there was no probable cause to seek an indictment.  This court should vacate the conviction for sexual abuse in the 1st degree on the basis of insufficient evidence.

(*Id.*)  The petitioner cites to the definition of sexual contact as it was defined in the 1984 version of West Virginia Code § 61-8B-1(6).  However, it appears that the 1986 version of W. Va. Code § 61-8B-1(6) contains the definition of sexual contact that is applicable to Count One of the indictment, because it was in effect on May 29, 1992, the date on which the sexual abuse of H.B. allegedly occurred.

The section 2254 petition states that "[t]he definition of sexual contact was revised in 1986, but the legislature did not revise or re-enact the sexual abuse in the 1st degree statute."  (ECF No. 2 at 6).  This statement would seem to suggest that the petitioner believes that the court was bound to apply the 1984 definition of sexual contact, rather than the 1986 definition, simply because the state legislature did not amend the sexual abuse statute at the same time.  This contention lacks merit, because both statutes as they existed at the time of the alleged crime must be read *in pari materia* (construed together as one law)*.*

The 1986 version of W. Va. Code § 61-8B-1(6) stated as follows:

> "Sexual contact" means any intentional touching, either directly or through clothing, of the anus or any part of the sex organs of another person, or the breasts of a female, or intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

W. Va. Code § 61-8B-1(6) (1986, 1st Ex Session c. 11).

The petitioner attempts to make an issue out of the fact that H.B. was not eleven years old at the time of this alleged incident.[8]  (ECF No. 2 at 6).  However, because the charge concerning the alleged sexual abuse of H.B. occurred in 1992, the jury was

---

[8]  The 1984 version of W. Va. Code § 61-8B-1(6) upon which the petitioner erroneously relies in support of this claim, defined "sexual contact" to include "any intentional touching, either directly or through clothing . . . *of the breasts of a female eleven years old or older* . . ." *See* W. Va. Code § 61-8B-1(6) (1984 c. 56).

provided with the appropriate definition of sexual contact under the 1986 statute, which did not contain any age restriction with regard to the touching of a female's breasts.[9]

In Ground One of his section 2254 petition, the petitioner also contends that the jury did not specifically find that the touching was done for the sexual gratification of either party and further asserts that this element was omitted from the indictment. (ECF No. 2 at 6).  However, a review of the trial transcript demonstrates that the jury was instructed on the sexual gratification element as part of the instruction on sexual contact, and that sexual contact was specified as an essential element of first degree sexual abuse in each applicable count of the indictment.   Thus, the fact that the indictment omitted any mention of the sexual gratification element is of no consequence.

The respondent's Memorandum of Law in support of his Motion for Summary Judgment touches on each of these points, asserting that the trial court correctly instructed the jury on Count One of the indictment concerning the alleged sexual abuse of H.B using the 1986 definition of sexual contact.  (ECF No. 14 at 11).  The respondent's Memorandum further asserts that the petitioner's claim that the State could not prove the essential element of sexual contact because H.B. was 10 years old at the time of the alleged crime must be rejected.  (*Id.* at 11-12).  The Memorandum of Law specifically states:

> Importantly, after the definition of sexual contact was changed in 1986, there was no requirement that a female be eleven years old or older.  *See State v. Rummer*, 189 W. Va. 369, 377, 432 S.E.2d 39, 47 (1993) (quotation omitted).

(*Id.* at 12).

---

[9]  The petitioner also challenges the jury instruction given on sexual contact as it pertains to other counts of conviction which will be discussed in greater detail *infra.*

The petitioner elaborates on his sufficiency of evidence claim in his Response to the respondent's Motion for Summary Judgment.  The petitioner asserts that, in making the petitioner's Motion for Judgment of Acquittal at the close of the State's case in chief, Mr. Bradley argued that the State failed to prove that H.B. had "breasts" that the petitioner could have intentionally touched in order for the "sexual contact" element to be met.  (ECF No. 22 at 2-7).  This specific argument was not addressed in the petitioner's section 2254 petition itself.

The Motion for Judgment of Acquittal was largely predicated on H.B.'s testimony that the petitioner "reached around and touched me on the bust" (ECF No. 13, Ex. 2 at 84) juxtaposed with her age and "prepubescent" appearance, as well as the testimony of Rossie Martin, the petitioner's ex-wife, who testified that, when H.B. told her what the petitioner had done, she stated, "I don't have any boobs, but he was feeling my boobs and he licked my face." (ECF No. 13, Ex. 2 at 212).  In making the Motion for Judgment of Acquittal, Mr. Bradley argued:

> With respect to Count 1 of the Indictment, which charges sexual abuse in the first degree and the contact being by intentionally touching her breasts -- and that charge related to the witness [H.B.] -- on the grounds that the State failed to prove that the child had breasts, I believe there are two items of evidence on that question.  First, the child's physical appearance, as she appeared in front of the jury, she appeared to be a prepubescent child, that she had not yet reached puberty; and secondly, that the evidence was that the child herself stated that, "I have no boobs."  A reasonable interpretation of that is that she had not yet reached puberty.  And also in support of that motion, Your Honor, I submit to the Court Webster's New World Dictionary copyright 1986, Simon and Schuster, that defines the word "breast."

(ECF No. 13, Ex. 2 at 262).  In response to this argument, the prosecutor asserted that, significantly, the language of W. Va. Code § 61-8B-1(6) defining sexual contact was amended in 1986 to remove the requirement that sexual contact include the touching of

"the breast of a female 11 years old or older" and that the version of W. Va. Code § 61-8B-7 governing first degree sexual abuse, at that time, required sexual contact with a child who is 11 years old or less. Thus, the prosecutor argued, by implication, the statutes, read together, governed the touching of the breast of a female who was under eleven years of age. (*Id.* at 262-263).

The trial judge ultimately heard *in camera* testimony from a doctor called by the prosecution, who testified that both men and women have breast tissue which is present from gestation and, thus, she would consider a ten year old girl to have "breasts." (*Id.* at 279-280). The trial judge ultimately found, as a matter of law, that the term "breasts," as used in the statute, included H.B.'s breasts. Thus, the court denied the petitioner's Motion for Judgment of Acquittal on that basis. (*Id.* at 224-225).

The petitioner's Response to the Motion for Summary Judgment reiterates and expands upon the arguments made in his Motion for Judgment of Acquittal. He asserts that a "breast" as used in W. Va. Code § 61-8B-1(6) must also be a "sex organ." (ECF No. 22 at 5). He further asserts that, at trial, "there was no effort by the State or the Defense to determine in [sic; if] [H.B.] had entered puberty or if her breasts might realistically be deemed a sex organ under the relevant law." (*Id.* at 6). Accordingly, the petitioner now contends that there was insufficient proof of this element of the offense and that such insufficient evidence violated his right to due process. (*Id.*) The petitioner also asserts, for the first time, a claim that the prosecution of an individual over 14 years of age for touching a prepubescent female under 11 years of age violates the Equal Protection Clause of the Fourteenth Amendment because her breasts have not become a "sex organ" and "no prosecutor has prosecuted an individual over 14 years old for intentionally touching the breasts of a prepubescent male under eleven (11) years old

because a male['s] breasts remain[] rudimentary throughout his life and do not become

a sex organ." (*Id.* at 7).

> The respondent's Reply addresses these issues as follows:

> As Petitioner recognizes, Dr. Sheila Stastny, D.O., testified at trial that in
> her medical opinion a ten year old girl has breasts.  (Resp't's Ex. 2 at 222
> [appellate record p. 280]).  Subsequently, the trial court found that it was
> satisfied that the legal definition of breasts included the young victim's
> breasts in this case.  (*Id.* at 224 [appellate record p. 282]).  Petitioner can
> provide no law that would require a jury to distinguish between a pre-
> pubescent female and a post-pubescent female in order to find that
> Petitioner committed the offense of sexual abuse in the first degree when
> he intentionally rubbed the breasts of H.B. on May 29, 1992.  Petitioner's
> claim that he could not have committed first degree sexual abuse in this
> instance solely because of the victim's young age is wholly without merit
> and must be rejected.

> Petitioner also cites the Equal Protection Clause in his Response,
> but neither demonstrates how his rights were violated nor explains how
> the Equal Protection Clause applies to his sufficiency of the evidence
> claim.  (ECF No. 22 at 7-8).

(ECF No. 24 at 4-5).

The judge determined that the question of whether the ten year old victim had

breasts  as used in the definition of sexual contact under W. Va. Code § 61-8B-1(6) was a

legal question, and answered it in the affirmative.[10]  In accordance with such finding,

and taking the evidence in the light most favorable to the prosecution, the petitioner

fails to demonstrate that no reasonable trier of fact could have found the essential

elements of first degree sexual abuse with respect to the petitioner's alleged conduct

with H.B.

Furthermore, to the extent that the petitioner has raised his purported equal

protection claim for the first time in his Response to the Motion for Summary

---

[10]  The petitioner's argument that a female under the age of eleven cannot be sexually abused by the
touching of her breasts would appear to contradict the legislative intent of the sexual abuse statute, which
is to combat sexual predation upon young children.

Judgment, the presiding District Judge should decline to address it, as it is not properly before the court. *See, e.g., Carter v. Lee*, 283 F.3d 240, 252 n.11 (4th Cir. 2002) ("this Court normally views contentions not raised in an opening brief to be waived); *Cutera v. Bd. of Supervisors of La. State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint but rather is raised only in response to a motion for summary judgment is not properly before the court.")  This is especially true in the context of a habeas corpus petition.

### *Sexual Abuse by a Parent Convictions (Re-numbered Counts Seven and Eight)*

Unrelated to the counts concerning H.B., in Ground One of his section 2254 petition, the petitioner also asserts a sufficiency of evidence claim concerning his conviction of sexual abuse by a parent, as alleged in re-numbered Count Seven (formerly Count Seventeen of the indictment).  The pertinent part of Ground One of the section 2254 petition states:

> The trial judge instructed the jury that the [sic] in order to find the defendant guilty of sexually abusing his sixteen year old step-daughter in either 1988 or 1989, the State had to overcome the presumption that he is innocent, and prove to the satisfaction of the jury beyond a reasonable doubt that (1) the Defendant Harold Stephen Martin, (2) Between the ____ day of September 1988 and the ____ day of June 1989, (3) Did engage in sexual contact with [T.M.], (4) by intentionally touching the breasts and buttocks of the said [T.M.], (5) and that at the time Harold Stephen Martin engaged in such act, he was the father of [T.M.] who was a child in his care, custody and control.  (*State v. Martin*, Instructions to the Jury, p. 107).

> Touching the buttocks of a sixteen (16) year old girl does not fall within the legal definition of sexual contact, i.e., "Sexual contact means intentional touching, either directly or through clothing, of the anus or any part of sex organs of another person, or the breasts of a female or intentional touching of any part of another person's body by the male sex organs, where the victim is not married to the actor, and the touching is done for the purpose of gratifying the sexual desire of either party."  W. Va. Code § 61-8B-1(6) (1986, c. 11)

(ECF No. 2 at 7-8). The petition further asserts that, since 1976, the West Virginia Legislature has enacted or revised the definition of sexual contact five times. The petition asserts that the trial judge gave a definition of sexual contact which was incongruent with the 1986 statutory definition, and that, if his conviction was predicated on the touching of his step-daughter's buttocks, his conviction should be vacated. (*Id.* at 8).

The respondent's Memorandum of Law in support of his Motion for Summary Judgment summarily states that "Petitioner's assertion that touching the buttocks of a sixteen year old girl does not fall within the definition of sexual contact is also without merit." (ECF No. 14 at 13).

The petitioner's Response transforms this claim into another new claim in which he claims that "there was a total absence of the necessary evidence to sustain a conviction for violating W. Va. Code § 61-8D-5, after the complainant testified that the abuse terminated prior to her 15th birthday." (ECF No. 22 at 21-22). The petitioner also filed a separate Motion for Partial Summary Judgment (ECF No. 19), addressing for the first time in any of his habeas proceedings, that his convictions on both counts of sexual abuse by a parent (re-numbered Counts Seven and Eight) were unconstitutional because the State failed to prove any conduct that would constitute sexual contact under that statute in the time period alleged in those counts. All of these claims, however, are unexhausted. Moreover, as noted above, because these claims were not initially addressed in the petitioner's section 2254 petition, this court should not consider them. Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the claims asserted in the petitioner's Motion for Partial Summary Judgment (ECF

No. 19), and those raised for the first time in his Response to the Motion for Summary Judgment, are not appropriate for adjudication by this court.

### *First Degree Sexual Abuse and Battery Convictions (Counts One and Two)*

In Ground One of his petition, the petitioner further appears to assert that there is no evidence to demonstrate that the alleged conduct that gave rise to Counts One and Two occurred on May 29, 1992.  (ECF No. 2 at 7).  However, the petitioner himself admitted that fact when he testified at trial.  (ECF No. 13, Ex. 2 at 308).  The petitioner bases this particular challenge on his allegation that H.B. testified that this incident occurred when she was in the fourth grade when she was nine (9) years old, which would have been between January 11, 1991 and January 11, 1992.  (ECF No. 2 at 7).  The petitioner also attempts to raise, for the very first time in any of his proceedings, a statute of limitations argument concerning the misdemeanor battery count.  (*Id.*)

However, as noted by the respondent in his Memorandum of Law:

[C]ontrary to Petitioner's assertions, H.B. testified that she was in fourth grade and probably nine or ten when the offense occurred.  Therefore, viewing the evidence in the light most favorable to the prosecution, H.B.'s testimony does not preclude a reasonable jury from finding that the offense occurred on May 29, 1992.

(ECF No. 14 at 13; ECF No. 13, Ex. 2 at 81).  Therefore, there is no basis for an insufficient evidence claim or other claims based upon the date of the alleged sexual abuse and battery upon H.B.

In Ground One of his petition, the petitioner further asserts that his conviction for battery (as charged in Count Two of the indictment) was also improper because the State did not prove that the petitioner acted "unlawfully" or that he "intentionally made physical contact of an insulting and provoking nature with [H.B.], or unlawfully and intentionally caused harm to [H.B.]" (ECF No. 2 at 6).  The petitioner further contends

that the jury was not instructed that they had to find that the petitioner acted "unlawfully" and "intentionally" and that the jury instructions further omitted the location element; that is, that the battery occurred in Wood County.  (*Id.* at 7).

> The respondent's Memorandum of Law addresses these issues as follows:
>
> The jury was instructed that a battery is committed when any person unlawfully and intentionally makes physical contact of an insulting or provoking nature, and that the jury must find beyond a reasonable doubt that Petitioner on or about the 29th day of May, 1992 intentionally made physical contact of an insulting or provoking nature with the person of H.B.  Petitioner asserts that H.B. testified that the battery occurred when she was nine years old, which would have placed the battery occurring between January 11, 1991 and January 11, 1992.  However, contrary to Petitioner's assertions, H.B. testified that she was in fourth grade and probably nine or ten when the offense occurred.  Therefore, viewing the evidence in the light most favorable to the prosecution, H.B.'s testimony does not preclude a reasonable jury from finding that the offense occurred on May 29, 1992.

(ECF No. 14 at 12-13).[11]

The petitioner's counsel also addressed the sufficiency of the evidence concerning the battery count in his Motion for Judgment of Acquittal, claiming that the State failed to offer any proof that the petitioner's touching or physical contact with H.B. was "unlawful."  Mr. Bradley attempted to argue that the State had to prove that the physical contact was otherwise in violation of some state law.  (ECF No. 13, Ex. 2 at 270-271).  However, the trial judge found that argument to be specious and denied the motion, finding that "[the State] would have to prove it is unlawful showing that there was by a physical contact of an insulting or provoking nature, intentional."  (*Id.* at 270).

---

[11]  Although the petitioner's Response quotes Count Two of the indictment and the jury instruction on battery, the petitioner abandons any further discussion of the sufficiency of the evidence of a battery, and instead argues that battery should be considered a lesser included offense of first degree sexual abuse, which renders his consecutive sentences unconstitutional under the Fifth, Eighth and Fourteenth Amendments, another unexhausted claim raised for the first time in his Response.  The petitioner's lesser included offense claims will be addressed further below.

The petitioner has not demonstrated that the trial court's ruling was improper under state law.  Moreover, based upon the evidence taken in the light most favorable to the prosecution, any rational trier of fact could have found that the petitioner's licking of H.B.'s face constituted an intentional physical contact of an insulting or provoking nature that was, thus, unlawful.

In his Amended Petition for Post-Conviction Habeas Corpus (hereinafter "Circuit Court petition"), the petitioner generally challenged the sufficiency of the evidence concerning his convictions, in conjunction with the failure to severe the counts involving the two different victims,.  (ECF No. 13, Ex. 15 at 20-30).   Stating that "a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt," the Circuit Court made the following findings concerning the sufficiency of the evidence:

> The State presented multiple witnesses who alleged being sexually abused by the Petitioner, including the Petitioner's step-daughter, T.M., who testified that the Petitioner abused her for a period of approximately ten years.  Considering the amount of evidence that was brought against the Petitioner, there is sufficient support for the jury's finding that the Petitioner was guilty beyond a reasonable doubt.  Based on the foregoing, the Court finds and concludes that the Petitioner has failed to prove by a preponderance of the evidence that there was insufficient evidence to sustain a conviction.

(ECF NO. 13, Ex. 17 at 8).

Based upon a review of the entire trial record in the light most favorable to the prosecution, the undersigned proposes that the presiding District Judge **FIND** that any rational trier of fact could have found the essential elements of first degree sexual abuse and battery as pled in the remaining counts of the indictment and, thus, the State presented sufficient evidence to support all of the petitioner's convictions.

Accordingly, the undersigned further proposes that the presiding District Judge **FIND** that the state courts' decisions were neither contrary to, not an unreasonable application of, clearly established federal law, and were not an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Therefore, the undersigned further proposes that the presiding District Judge **FIND** that the respondent is entitled to judgment as a matter of law on all of these claims.

### C.    Ground One - Double Jeopardy and Lesser Included Offenses

Ground One of the petitioner's section 2254 petition further asserts that the petitioner's convictions for both battery and first degree sexual abuse violated the federal guarantee against double jeopardy.[12]   (*Id.*)   The section 2254 petition simply contains a blanket statement that "prosecution for battery, a misdemeanor, and sexual abuse in the first degree, violates the federal constitutional guarantee against double jeopardy." (ECF No. 2 at 7).

The respondent's Memorandum of Law addresses this claim as follows:

> Petitioner's remaining claims within this ground are also without merit.  Prosecution for battery and first degree sexual abuse does not violate the prohibition against double jeopardy as each were separate offenses.  The battery conviction related to Petitioner's licking the face of H.B. while the first degree sexual abuse conviction related to Petitioner intentionally touching H.B.'s breasts.

(ECF No. 14 at 13).

Once again, the petitioner's Response attempts to expand the claims contained in his section 2254 petition or raise entirely new claims.  After citing to the language pled in Count Two of the indictment and the instruction given to the jury on battery, the

---

[12]  The Double Jeopardy Clause of the Fifth Amendment applies to the states through the Fourteenth Amendment.  *State v. McGilton*, 729 S.E.2d 876, 882 n.8 (W. Va. 2012).

Response asserts, for the first time, that, in 1996, the West Virginia Legislature recognized battery as a lesser included offense of sexual assault.  *See State v. Crabtree*, 482 S.E.2d 605, 610 (W. Va. 1996).  (ECF No. 22 at 12).  The Response further states:

> Petitioner would ask this Court to find that as the Supreme Court of West Virginia has determined battery is a lesser included offense of sexual assault, that in this instance, battery is a lesser included offense of sexual abuse in the 1st Degree, and, therefore, consecutive sentences are [sic] violate the 5th, 8th and 14th Amendments of the U.S. Constitution.

(*Id.*)  The petitioner's Response asserts that the sexual abuse and battery charges concerning H.B. stemmed from one continuous act on May 29, 1992, and further contends that "[c]umulative punishments for the same coterminous act where his conduct can be construed to constitute two statutory offenses, when in effect only one offense has been committed, is unconstitutional . . . ." (*Id.* at 13).

The United States Supreme Court addressed this issue in *Blockburger v. United States*, 284 U.S. 299 (1932).  "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."  *Id.* at 304.  Both parties cite *Blockburger* in their briefs.  (ECF No. 22 at 13; ECF No. 24 at 5).

However, as aptly noted by the respondent in both his Memorandum of Law and his Reply brief (ECF No. 14 at 13; ECF No. 24 at 5), the petitioner's charges for first degree sexual abuse and battery did not arise out of the same act or transaction, because the sexual abuse charge stemmed from the alleged touching of H.B.'s breast under her nightgown in the living room, whereas the battery charge stemmed from the petitioner's alleged licking of H.B.'s face later that night.  (*Id.*)  Therefore, the undersigned agrees

that the petitioner's convictions on both counts does not violate the principles of double jeopardy.

Moreover, because the petitioner's assertions concerning the right to instructions on lesser included offenses are raised for the first time in his Response brief, the undersigned proposes that the presiding District Judge **FIND** that those claims are not appropriate for adjudication by this court.

For the reasons stated herein, the undersigned further proposes that the presiding District Judge **FIND**, based upon all of the evidence presented at trial in the light most favorable to the prosecution, that the petitioner has not demonstrated that no reasonable juror would have found him guilty of both first degree sexual abuse and battery of H.B., or that such convictions were otherwise constitutionally infirm and, thus, the respondent is entitled to judgment as a matter of law on all of the claims contained in Ground One of the petitioner's section 2254 petition.

### D.      Ground Two – Ineffective Assistance of Counsel

In Count Two of his section 2254 petition, the petitioner raises thirteen claims of ineffective assistance of counsel.  In *Strickland v. Washington*, 466 U.S. 688 (1984), the Supreme Court adopted a two-prong test for determining whether a defendant received adequate assistance of counsel.   A defendant must show: (1) that counsel's representation fell below an objective standard of reasonableness; and (2) that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   *Id.* at 687-91.  Moreover, "judicial scrutiny of counsel's performance must be highly deferential."    *Id.* at 689.   Furthermore, the AEDPA "adds a layer of respect for a state court's application of the legal standard." *Holman v. Gilmore*, 126 F.3d 876, 881 (7th Cir. 1997).

In reviewing a trial counsel's performance, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, *id.* at 689, and the burden is on the petitioner to show prejudice.  *Hutchins v. Garrison*, 724 F.2d 1425 (4th Cir. 1983).   Further, "[a] convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.   A petitioner may not merely speculate about potential prejudice but must "affirmatively prove" that the result of the proceedings would have been different but for the deficient performance of trial counsel.  *See Strickland*, 466 U.S. at 693.

The thirteen claims of ineffective assistance of counsel asserted in the petitioner's section 2254 petition were exhausted in the petitioner's state court habeas petitions. However, in both the petitioner's Circuit Court Amended Petition and his appeal brief, the petitioner merely listed the thirteen claims without asserting any further factual support or argument.   Although Mr. Dillon questioned Mr. Bradley about the factual basis for some of these claims during the omnibus hearing, the state courts found that the petitioner did not offer sufficient evidence to establish either that Mr. Bradley's conduct fell below an objective standard of reasonableness, or that the petitioner's defense was prejudiced by Mr. Bradley's decisions.  (ECF No. 13, Ex. 17 at 9-13; ECF No. 22 at 3; ECF No. 26 at 2-3).   Applying the *Strickland* standard, the SCAWV made the following findings in its two Memorandum Decisions:

> In the present case, petitioner gives a list of actions or inactions he feels illustrates his counsel's ineffective assistance.  These include:  allowing the preliminary hearing to be held when petitioner was not present; failing to have petitioner's competency evaluated; failing to file a motion for a bill of particulars until after the trial was continued; failing to object to the State's motion to continue the trial based on one victim's unavailability; failing to insist on inspecting counseling records of one of the victims;

> failing to move for a mistrial when testimony regarding petitioner's right
> to remain silent was brought up at trial; failing to have petitioner submit
> to a sexual offender evaluation; failing to hire an expert witness; failing to
> request a lesser included instruction; failing to object to the improper
> sentence which has now been corrected; and failing to appeal for eight
> years.   However, petitioner gives no analysis of how these actions or
> inactions affected the outcome of his trial.   Nonetheless, a review of the
> circuit court's order denying habeas relief shows that the circuit court
> examined each allegation in depth and found each to be baseless.   We
> agree and find no error in the circuit court's finding that petitioner's trial
> counsel was not ineffective.

(ECF No. 13, Ex. 22 at 2-3; Ex. 26 at 3).

After an exhaustive examination of the trial and omnibus hearing transcripts, the undersigned proposes that the presiding District Judge **FIND** that the petitioner has failed to demonstrate that his counsel's conduct fell below an objective standard of reasonableness.  Many of the actions taken by Mr. Bradley were strategic decisions, and it is not this court's province to second-guess the strategic decisions of counsel.  *See Stamper v. Muncie*, 944 F.2d 170, 178 (4th Cir. 1991); *See also Goodson v. United States,* 564 F.2d 1071, 1072 (4th Cir. 1977).  "In defining the required showing under the first prong of the *Strickland* analysis, the United State[s] Supreme Court cautioned that a counsel's conduct does not constitute ineffectiveness if it may be construed as the result of 'tactical decisions.'  *Strickland*, 466 U.S. at 689.

The undersigned further proposes that the presiding District Judge **FIND** that the petitioner has not demonstrated that there is a reasonable probability that the outcome of his trial would have been different, but for his counsel's performance. Moreover, as noted in the SCAWV's Memorandum Decisions, the petitioner's specific claims concerning his incorrect sexual assault sentences and the denial or delay of his direct appeal were mooted by his re-sentencing and the filing of his direct appeal.

Accordingly, the undersigned proposes that the presiding District Judge **FIND** that the state habeas courts' decisions denying Petitioner habeas corpus relief on these claims were neither contrary to, nor an unreasonable application of, clearly established federal law, or an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, presiding District Judge should further **FIND** that the respondent is entitled to judgment as a matter of law on Ground Two of the petitioner's section 2254 petition.

### E.    Ground Three – Improper Jury Instructions

In Count Three of his section 2254 petition, the petitioner contends that he was denied a fair and impartial jury trial because the trial judge gave an inaccurate definition of "sexual contact" as an essential element of certain crimes described in the indictment. (ECF No. 2 at 11).   In particular, it appears that the petitioner is challenging the instruction that the trial court gave to the jury concerning sexual contact as it pertained to re-numbered Count 6.  The petitioner specifically alleges as follows:

1.    In 1976, the West Virginia Legislature defined "Sexual contact" means any touching of the anus or any part of the sex organs of another person, or the breasts of a female eleven years old or older, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party. W. Va. Code § 61-8B-1(6) (1976, c. 43).

2.    Petitioner was indicted for violating West Virginia Code § 61-8B-6,[13] Sexual Abuse in the First Degree, between March 1980 and August 1980 (Count 4).[14]  Sexual contact is an essential fact of the offense.

---

[13]  Prior to 1984, the crime of first degree sexual abuse was defined in West Virginia Code § 61-8B-6.  This accounts for the citation to West Virginia Code § 61-8B-6 in each of the counts of "Sexual Abuse in the First Degree" charged in the petitioner's indictment, except for Count One concerning alleged victim, H.B., which is charged under West Virginia Code § 61-8B-7, because the alleged crime occurred in 1992, after amendments of the applicable statutes.  In 1984, the crime of "Sexual Abuse in the First Degree" appears to have been re-enacted under West Virginia Code § 61-8B-7, and West Virginia Code § 61-8B-6 became the statute governing "Sexual Abuse of a Spouse."   That statute was then repealed in 2000. Accordingly, there is presently no section 61-8B-6 in the West Virginia Code.

3.   Petitioner was indicted for violating West Virginia Code § 61-8B-6, Sexual Abuse in the First Degree between January 1984 and June 1984, (Count 9 [which was renumbered as Count 6 in the verdict form]).  Sexual contact is an essential fact of the offense.

4.   On the first day of trial, the State voluntarily dismissed thirteen of the eighteen counts regarding T.M.  Therefore, the case proceeded to the counts charging violations in 1981 (2 counts), 1984, 1988 and 1991.[15]

5.   Petitioner was entitled to have the judge instruct the jury using the 1976 definition of "sexual contact" regarding the crimes set forth in three counts including Count 4 and Count 9.

6.   The trial judge did not provide the 1976 definition of sexual contact as prescribed by the 1976 legislature.

7.   James Bradley, trial counsel, did not object when the trial judge have [sic; gave] an inaccurate instruction on "sexual contact" for the jury to use for offenses allegedly occurring before June 1984.

8.    In 1984, the West Virginia Legislature defined W. Va. Code § 61-8B-1(6) "Sexual contact" as meaning any intentional touching, either directly or through clothing of the anus or any part of the sex organs of another person, or the breasts of a female eleven years old or older, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.  (1984, c. 56).

9.   The phrase "any intentional touching, either directly or through clothing" did not become a part of the definition of "sexual contact" until July 1, 1984.

10.   Prior to July 1, 1984, the accused had to directly touch victim's anus, sex organ, or breasts in order to violate the law.

---

[14]   This count was dismissed prior to trial.  Accordingly, there is no need to analyze the applicable instruction given to the jury on sexual contact with regard to that count, as the jury did not even consider it.

[15]   The two 1981 counts (Counts Three and re-numbered Count Four) charged the petitioner with first degree sexual assault, for which the definition of sexual contact has no application.  The 1984 count (re-numbered Count Six) charged the petitioner with first degree sexual abuse, and the 1988 and 1991 counts (re-numbered Counts Seven and Eight) charged him with sexual abuse by a parent.  All of those counts have sexual contact as an essential element thereof.  Count Five, on which the petitioner was acquitted, also charged first degree sexual abuse and had sexual contact as an essential element.

11. In 1986, the West Virginia Legislature defined "Sexual contact" means any intentional touching, either directly or through clothing, of the anus or any part of the sex organs of another person, or the breasts of a female or the intentional touching of any part of another person's body by the actor's sex organs, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party. West Virginia Code § 61-8B-1(6) (1986, 1st Ex. Session, c. 11).

12. The phrase "breasts of a female eleven years old or older" was not removed from the law until 1986.

13. The trial judge instructed the jurors that "sexual contact" means any intentional touching either directly or through clothing, of any part of another person's body by the actor's sex organs, or of the breasts of a female, or of the anus or sex organs of a person where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

14. Therefore, the jury was not properly charged as to Counts 4 and 9 and the jury used an inaccurate definition to arrive at a guilty verdict on those two charges.

Petitioner asks this court to vacate the three convictions where the jury was not provided the properly [sic; proper] legal definition of sexual contact by the trial judge.

(ECF No. 2 at 11-12).

There are several inaccuracies in Ground Three of the petitioner's section 2254 petition. First, to the extent that the petitioner contends that the jury was improperly instructed on sexual contact as it pertained to Count Four of the indictment, the undersigned notes that the initial Count Four contained in the indictment was dismissed prior to trial. Accordingly, the jury did not consider that count at all. Second, to the extent that the petitioner may be referring to the re-numbered Count Four set forth in the jury verdict form, that count addressed the former Count Fifteen contained in the indictment, which charged the petitioner with first degree sexual assault, and does not include an essential element of sexual contact. Accordingly, the petitioner's argument

concerning an improper instruction on sexual contact is also inapplicable to the re-numbered Count Four.

Furthermore, although the definition of sexual contact was pertinent to Count Five (as pled both in the initial indictment and in the re-numbered counts for verdict), the jury acquitted the petitioner on that count. Accordingly, how the jury was instructed as it pertains to that count is irrelevant to his instant claim. However, the petitioner's argument does appear to implicate the charge that was initially contained in Count Nine of the indictment (which was re-numbered as Count Six in the jury verdict form). That count charged as follows:

> That between the ____ day of January, 1984 and the ____ day of June, 1984, in Wood County, West Virginia, Harold Stephen Martin committed the offense of "Sexual Abuse in the First Degree" by unlawfully and feloniously engaging in sexual contact with the person of T.M., to wit: touching the sex organ of the said T.M., at a time when they were not married and at a time when T.M. was less than eleven years of age and the said Harold Stephen Martin was fourteen years old or more, against the peace and dignity of the State.

(ECF No. 13, Ex. 1 at 5, Count Nine). The verdict form addressed this count, which was re-numbered as Count Six, as follows:

> With respect to the charge of first degree sexual abuse concerning [T.M.] occurring between January of 1984 and June of 1984, we, the jury find the defendant, Harold Stephen Martin, <u>guilty</u> as charged in the within indictment.

(ECF No. 13, Ex. 2 at 395)

The trial judge gave one singular instruction concerning the definition of sexual contact which appears to have used the language of W. Va. Code § 61-8B-1(6) as it was enacted in 1986, not as it was enacted in 1976, which would have been the definition applicable to the 1984 charge of first degree sexual abuse contained in the re-numbered

Count Six. Specifically, according to the trial transcript, the jury was instructed as follows concerning the definition of sexual contact:

> "<u>Sexual contact</u>" means any intentional touching, either directly or through clothing, of any part of another person's body by the actor's sex organs, or of the breasts of a female, or of the anus or sex organs of a person, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

(ECF No. 13, Ex. 2 at 380). As noted by the petitioner, the appropriate definition applicable to this particular count is the 1976 definition. Thus, the petitioner asserts that the jury should have been instructed as follows:

> "<u>Sexual contact</u>" means any touching of the anus or any part of the sex organs of another person, or the breasts of a female eleven years old or older, where the victim is not married to the actor and the touching is done for the purpose of gratifying the sexual desire of either party.

(ECF No. 2 at 11).

However, as noted by the respondent in his Reply (ECF No. 24 at 7), "a faulty jury instruction will constitute a violation of due process only when the instruction so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). Generally speaking, alleged errors in the instructions given by a trial court are not cognizable on federal habeas review, because they raise issues of state law, not federal constitutional law.

> It is black letter law that a federal court may grant habeas relief "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (West Supp. 1998); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed.2d 385 (1991) (emphasizing that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States."). Because Wright's claim, when pared down to its core, rests solely upon an interpretation of Virginia's case law and statutes, it is simply not cognizable on federal habeas review. *See Smith v. Moore*, 137

F.3d 808, 822 (4th Cir. 1998) (refusing to entertain claim that jury instruction misstated South Carolina law).

*Wright v. Angelone*, 151 F.3d 151, 157 (4th Cir. 1998).

The respondent asserts that the petitioner's claim is not cognizable because it is merely a claim of instructional error under state law.  (ECF No. 14 at 15).  However, he further asserts that the subject instruction was not erroneous.  His Memorandum of Law states:

> The plain language of the statute prior to 1984 states that sexual contact means *any* touching of the anus, sex organs or breasts, if the touching is done for the purposes of gratifying a sexual desire.  Even if Petitioner's claim were a cognizable federal constitutional claim, finding no error with regard to the above instruction given by the circuit court is not contrary to or an unreasonable application of federal law.  Accordingly, this claim must also be dismissed as a matter of law.

(*Id.* at 16).

In the instant case, alleged victim T.M. testified that, around the time when they moved to the house in Williamstown, the petitioner was continuously rubbing her legs, arms and back and that he also brushed his hand up against her butt.  (ECF No. 13, Ex. 2 at 119-120).  T.M. further testified that as time went on, the rubbing of her legs graduated to rubbing up to her crotch and, although T.M. attempted to push his hand away, the petitioner persisted in continuing to rub her there.  (*Id.* at 120).  When asked by the prosecutor if his hand actually touched her vagina, T.M. testified that it was "like a brush of the hand because I would move it."  (*Id.*)  T.M. further testified that, during this time period, the petitioner forced her to take naps with him, during which time they would both be naked, and he would rub her with his hands, and eventually, "there was a time when he started to rub his penis against my butt, and I was upset."  (*Id.* at 121-122).  T.M. stated that that was the first time that she thought that the petitioner was going to

try to have sex with her, and that she couldn't have been more than eleven years old at that time.  (*Id.* at 123).  This testimony supports a finding that the petitioner touched "the anus or any part of the sex organs of another person" as required by the 1976 definition of sexual contact, upon which the jury should have been instructed.

Based upon this evidence taken in the light most favorable to the prosecution, and in light of the evidence presented as a whole during the trial, the undersigned proposes that the presiding District Judge **FIND** that any reasonable trier of fact could have found the essential elements of first degree sexual abuse under either the 1976 or 1986 definitions.  Thus, the instructional error did not have "a substantial and injurious effect or influence in determining the jury's verdict."  *See Brecht v. Abrahamson,* 507 U.S. 619, 623 (1993) (quoting Kotteakos v. United States, 328 U.S. 750, 776 (1946)) (the standard for determining harmless error in habeas proceedings is whether the error "had a substantial and injurious effect or influence in determining the jury's verdict.") Accordingly, even if the trial court erred in providing the jury with the wrong statutory language defining sexual contact, such error was harmless because the evidence supported a guilty verdict beyond a reasonable doubt under the correct definition as well.

Furthermore, the undersigned has conducted an exhaustive review of the instructions contained in the trial transcript and has found no instruction that "by itself so infected the entire trial" as to render it fundamentally unfair.  Thus, the undersigned proposes that the presiding District Judge **FIND** that the petitioner has not stated cognizable claims in Ground Three of his federal petition, and that the petitioner's convictions and the denial of habeas corpus relief by the state courts were neither contrary to, nor an unreasonable application of, clearly established federal law, nor

based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Therefore, the undersigned further propose that the presiding District Judge **FIND** that the respondent is entitled to judgment as a matter of law on the claims contained in Ground Three of the petitioner's section 2254 petition as well.

## **RECOMMENDATION**

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** the respondent's Motion for Summary Judgment (ECF No. 13), **DENY** the petitioner's Motion for Partial Summary Judgment (ECF No. 19), **DENY** the petitioner's section 2254 petition (ECF No. 2), and **DISMISS** this civil action from the docket of the court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the district court and a waiver of appellate review by the circuit court of appeals.  *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474

U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce,* 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on the opposing party and Judge Goodwin.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Petitioner, and to transmit it to counsel of record.

August 28, 2015

Dwane L. Tinsley
United States Magistrate Judge